IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>**JORDAN WAYNE HOLT,**<br><br>*Defendant.* | Case No. 21-CR-205 JFH |

**UNITED STATES' OMNIBUS MOTIONS IN LIMINE**

**COMES NOW** the United States of America, by and through Christopher J. Wilson, Acting United States Attorney for the Eastern District of Oklahoma, and Brian W. Lynch, Trial Attorney, United States Department of Justice Organized Crime & Gang Section, respectfully moves this Court to:

A. preclude any argument that the Defendant acted in self-defense because the Defendant escalated the confrontation;

B. preclude evidence of specific acts of domestic violence and related charges of the Victim because these acts do not demonstrate a pertinent character trait under Fed. R. Evid. 404 and 405 and, assuming arguendo they did, the probative value of such evidence is substantially outweighed by unfair prejudice under Fed. R. Evid. 403;

C. if the Defendant is permitted to offer specific incidents of the Victim's alleged conduct for violence, permit the Government to offer evidence of specific incidents of the Defendant's same trait for violence under Fed. R. Evid. 404 and 405; and

D. preclude the Defendant's prior statement to law enforcement because it is hearsay under Fed. R. Evid. 801.

1

I. **PROCEDURAL HISTORY**

The Defendant is scheduled for a March 1, 2022 trial on four counts: (1) second degree murder in violation of Title 18 United States Code Sections 1111(a), 1151, and 1153; (2) use of a firearm during and in relation to a crime of violence – second degree murder in violation of Title 18, United States Code, Section 924(c)(1)(A); (3) causing the death of a person in the course of a violation of Title 18 U.S.C. 924(c) in violation of Title 18, United States Code, Section 924(j); and (4) assault with intent to commit murder in violation of Title 18, United States Code, Sections 113(a)(1), 1151, and 1153. The deadline for motions *in limine* is January 17, 2022.

II. **FACTUAL BACKGROUND**

　A.　**Events Leading to Murder of Larintino Scales**

　　i.　**July 31, 2019, Burglary of Sebastian Yanez' Home**

On July 31, 2019, Miriam Lopez reported to law enforcement that her house was burglarized, and she could not find the money that she had saved up to make a house payment. Lopez is the mother of Sebastian Yanez ("Yanez"), and Yanez lived with her at the time of the break-in. Yanez and the Defendant were friends. A neighbor stated she observed Yanez's ex-girlfriend, Lauren Hefner ("Hefner"), around the house the night before.

Through their investigation, law enforcement learned that Hefner and her current boyfriend, Tralyn French ("French"), were involved in burglarizing Yanez's home and stealing approximately $8,000-14,000 in cash. Phone records demonstrate that French and Hefner planned the burglary.

According to statements made by Hefner and French, Yanez posted on the social media platform, SnapChat, that he had $22,000. According to Hefner, she went with French and two others to Yanez's house. Hefner went into Yanez's room and stole $8,000 in cash. Hefner stated she, French, and the two other individuals split the money equally. According to Yanez, they stole $14,000 from him.

Hefner and French were both charged with Burglary in the Second Degree and Conspiracy in the McCurtain County District Court. Prior to resolving the case, Yanez sent a Facebook message to a family member of Hefner. Yanez messaged "…Im sure your aware of how your daughter made her way into my house n took 14k from me I wanted to see if you want to negotiate a little and you come up with my 14k and I wont show up to court and her and her man will go free…"

On August 4, 2020, Hefner plead guilty to Burglary in the Second Degree and was sentenced to time served, probation, and ordered to pay $2,000 in restitution. On May 7, 2021, French plead guilty to both counts and was sentenced to a prison term of 7 years.

    ii.    **August 1, 2019, Murder of Larintino Scales**

On August 1, 2019, a few days after the burglary of Yanez' home, at approximately 5:30 p.m., the Defendant was with Adrian Valdez ("Valdez") and Yanez around 800 Quincy Street in Idabel, Oklahoma. Yanez scheduled a fight with French because he believed French and Hefner burglarized his house and stole money. That day French and Hefner drove to the area of 800 Quincy Street so French could fight Yanez. As soon as Hefner and French got out of the vehicle, Hefner observed that the Defendant and Valdez were with Yanez. Both the Defendant and Valdez had firearms. A large crowd gathered to watch the expected fight between French and Yanez. Larintino Scales ("Scales" or "Victim") did not arrive with either side but was part of the crowd watching the fight. French and Yanez fought on the grass south of the apartments at 815 Quincy Street.

Several witnesses observed the Defendant position himself behind a dumpster south of 803 Quincy Street prior to the fight, which was east of the location of the fight. The Defendant had what was described by witnesses as a green "SKS" or "AK-47." The rifle was later identified as an AK-47 and recovered from Valdez' mother's home. Yanez held a baseball bat as French approached, but he threw it to the ground and took off his shirt once the fight started. During the fight, Yanez and French went to the ground and Yanez was on top of French. Traneicia French and Devin

3

Johnson then joined the fight and started to kick Yanez. At this point, Valdez displayed a revolver and fired multiple rounds into the ground and told people to move back.

After Valdez fired, the Defendant fired numerous rounds from his AK-47 from the area of the dumpster towards the location of the fight. The crowd scattered. After the shooting stopped, numerous witnesses observed that Scales was on the ground between two vehicles south of the location of the fight with a gunshot wound to the head. The vehicles near Scales had been damaged by bullets. Witnesses called 911 and law enforcement arrived and processed the scene.

Multiple witnesses stated that the Defendant was the one who shot Scales. There are conflicting witness accounts as to whether Scales possessed a firearm. Investigators located sixteen 9mm casings from three different guns and twenty-three 7.62 casings at the scene. (Bates Nos. 799-800). .

Scales was taken by ambulance to the hospital, where he later died. The medical examiner determined the manner of death to be homicide, and the cause of death to be a gunshot wound to the head. The medical examiner initially opined that the fatal gunshot likely came from within 6 inches by a small caliber weapon. However, after reviewing the crime scene as well as the autopsy report, OSBI Agent Brad Knight opined that "based upon the lack of uniformly round or oval defects in the skin of the midline forehead and the frontal bone, the recovered, severely deformed grey metal bullet with no apparent rifling characteristics, and the weight of the recovered severely deformed grey metal bullet, it is not consistent that SCALES was shot with a handgun as the primary target/impact." Instead, Agent Knight concluded that "the injury to SCALES by the recovered, severely deformed grey metal bullet was consistent with a bullet core or fragment of a fired bullet that struck an intermediate object before impacting SCALES in the midline forehead. The evidence from the scene supports the conclusion that a bullet was fired from a 7.62x39mm cartridge east of the Toyota Sienna minivan and Ford LTD near SCALES' location. Further, evidence supports the

4

conclusion that the fired bullet struck the Toyota Sienna minivan, perforated the driver's side C-pillar, fragmented, and a portion of the bullet core or fragment continued west over the top of the Ford LTD and struck SCALES in the midline forehead." Eyewitness testimony places the Defendant shooting a rifle from east of Scales' location.

Law enforcement interviewed the Defendant on August 2, 2019, at the Idabel Police Department. The Defendant admitted that he was present at the fight. The Defendant claimed that during the incident he heard four different gunshots. The Defendant stated that there were four different people shooting. The Defendant stated, "it should have been strictly fighting." The Defendant stated "I was in my own car…driving. I don't know why I got involved."

Law enforcement interviewed several witnesses. On August 2, 2019, Valdez was interviewed and stated that the Defendant took the AK-47 to Valdez's mother's house at 510 Southwest Quincy Street following the incident. Law enforcement went to the residence and obtained consent from Adrian Valdez's sister to search the premises. Law enforcement located the AK-47 in a back room of the residence under a mattress.

On August 12, 2019, law enforcement interviewed Keuntra Willis who had been standing with Scales at the time of the shooting. Willis stated that, at the time of the incident, he saw Valdez shoot four times into the ground and tell people to move back. Willis then saw Valdez pull up the pistol and shoot twice, but Valdez did not hit anyone. Willis observed that, while Valdez was shooting, the Defendant said to Scales, "Mont, get your hands out of your pocket" and "I wish you would." Willis saw Scales just nod his head up, and then the Defendant started shooting a rifle and everyone ran. Willis tried to run and was grazed by a bullet in his leg. Willis heard about 30 gunshots. When Willis returned to where he had been standing, he saw Scales with a bullet wound in his head.

B.      **Victim's Prior Criminal History**

The Government provided the Defendant with police reports related to alleged domestic altercations between Larintino Scales and his ex-girlfriend, Mila Hayes, that took place in 2013, 2014, 2015, 2017, and 2019[1]. The Government also provided the Defendant with the docket for an Emergency Protective Order issued against Scales on May 21, 2015.

In May 2019, Scales was involved in two domestic disturbances involving Hayes. On May 24, 2019, law enforcement was dispatched to an apartment that was shared by Scales and Hayes. Hayes stated that Scales choked her and pinned her against the floor. Law enforcement did not observe any markings on Hayes' neck evidencing choking. Law enforcement referred the case for Domestic Assault and Battery charges, but no charges were brought.

Six days later, on May 30, 2019, law enforcement was dispatched to the same apartment complex for a verbal altercation that allegedly turned into a physical altercation. Upon arrival, law enforcement observed a black 2018 Jeep Compass leaving the apartment complex at a high rate of speed. Law enforcement pursued the vehicle and heard "shots fired." Law enforcement ultimately conducted a traffic stop and removed the two occupants from the vehicle. The driver was identified as Scales and the front seat passenger as Josh Bryant ("Bryant"). Law enforcement located a black loaded pistol magazine in the driver side floorboard. On the side of the road two blocks north of their location, law enforcement also located a firearm that matched the cartridge size of the rounds in the magazine. The firearm and magazine were photographed seized as evidence.

During the investigation, law enforcement learned that Scales' sister had gotten into a physical altercation with Hayes. Scales allegedly assisted his sister by kicking Hayes on the left side of her back and head. Hayes grabbed a knife and stabbed Scales' sister. Hayes stated that

---

[1] The 2013, 2014, 2015, and 2017 incidents did not result in arrests and did not involve weapons.

Bryant was present with Scales at the scene. Hayes stated that after she stabbed Scales' sister, Bryant went into the above-referenced vehicle, grabbed a gun, and started shooting. Hayes stated that Scales had a firearm in each of his pockets.

Hayes had visible injuries to her head and mouth which law enforcement photographed. Witnesses told law enforcement that Bryant was the one who discharged a firearm during this incident. Scales was charged with misdemeanor offenses as a result of this incident, including: Eluding a Police Officer, Transporting an Open Container, and Domestic Assault and Battery. Scales was not charged with any firearms-related offenses.

    C.    **Defendant's Prior Criminal History**

        i.    **<u>2014 Incident – Shooting Firearm with Intent to Kill</u>**

On September 20, 2014, law enforcement was dispatched to the area of Southwest Choctaw Street and Southwest Quincy Street in Idabel, Oklahoma regarding multiple reported shootings. Law enforcement observed the suspect pickup truck and initiated a traffic stop. The Defendant and another male were in the bed of the truck. There were three occupants inside of the truck. Law enforcement observed several spent cartridge cases on the floor of the pickup bed. Law enforcement searched the Defendant and located a box of .22 long rifle shells in his pocket. Law enforcement located a .22 long rifle Interarms firearm under a shirt. The Defendant was the only person within reach of the firearm.

One of the occupants of the truck gave a written statement that he was giving the Defendant a ride home when he started shooting from the back of the truck. The Defendant was juvenile at the time. Law enforcement arrested the Defendant for "shooting from a vehicle," which is a felony and transported him to the juvenile detention facility.

      ii.  **2015 Incident —Possession of a Firearm**

On September 22, 2015, a female came to the Idabel Police Department with her baby. The female was upset stating that she was driving and was run off the road by another vehicle driven by the Defendant. The female stated the Defendant tried to block her in and then pushed her vehicle off the right side of the road. The female stated her vehicle came to a stop and the Defendant and another male got out of the other vehicle. The Defendant threatened the female. The female reported she could visibly see guns protruding from the pockets of the Defendant and the other male.

      iii.  **2018 Incident—Assault and Battery**

On September 14, 2018, a female reported to law enforcement that she was assaulted by the Defendant. The female claimed the Defendant slammed her to the ground. The female claimed the Defendant grabbed her by the neck and she blacked out. The female remembered someone helping her up.

**III. ARGUMENT**

  **A. The Defendant should be precluded from offering testimony, evidence, or cross-examination arguing that he acted in self-defense.**

"A person may resort to self-defense if he reasonably believes that he is in imminent danger of death or great bodily harm, thus necessitating an in-kind response." *United States v. Toledo*, 739 F.3d 562, 567 (10th Cir. 2014). To claim self-defense, a defendant must have reasonably believed that he was in "imminent danger." *Id.* The Tenth Circuit Pattern Jury Instructions provide, "a person is entitled to defend himself against the immediate use of unlawful force. But the right to use force in such a defense is limited to using only as much force as reasonably appears to be necessary under the circumstances." Tenth Circuit Pattern Jury Instruction 1.28.

  "Generally, a defendant must make a threshold showing on the elements of an affirmative defense prior to the presentation of the evidence to the jury." *United States v. Dodge*, 2018 U.S. Dist.

LEXIS 114510, 2018 WL 3352965, at *1 (D.N.M.) (citing *United States v. Bailey*, 444 U.S. 394, 412-15, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980). "A district court can assess the sufficiency of a defendant's affirmative defense before it is presented to a jury as part of its gate-keeping responsibilities." *United States v. Portillo-Vega*, 478 F.3d 1194, 1197 (10th Cir. 2007)). In fact, a court "can review the sufficiency of defendant's proffered evidence before trial, during trial or after the close of evidence before an instruction on the defense is given to the jury." *United States v. Graham*, 663 Fed. Appx. 622, 625-26 (10th Cir. 2016); *Portillo-Vega*, 478 F.3d at 1202.

In *United States v. Webster*, 373 Fed. Appx. 867, 873 (10th Cir. 2010), the Tenth Circuit found Webster's own testimony provided ample basis for the district court to conclude he was not acting in self-defense on two occasions; he was the one who escalated the confrontations in both incidents. The district court found that Webster had "established a pattern of reckless conduct with firearms"—a crime in Oklahoma. *See* Okla. Stat. Tit. 21 § 1289.11 (2008) ("It shall be unlawful for any person to engage in reckless conduct while having in his or her possession any shotgun, rifle or pistol, such actions consisting of creating a situation of unreasonable risk and probability of death or great bodily harm to another, and demonstrating a conscious disregard for the safety of another person.").

Here, the Defendant "escalated the confrontation" by bringing an AK-47 to what was otherwise a fistfight. *See Webster*, 373 Fed. Appx. at 873. Multiple witnesses told law enforcement that the Defendant, Yanez, and Valdez arrived before French, Hefner, and the other group of individuals. Several witnesses stated the Defendant possessed a rifle and set up behind a green dumpster east of the location of the fight. Once the fight between French and Yanez started, Valdez discharged several rounds into the ground. Numerous witnesses reported that the Defendant was behind the dumpster at this point and fired a barrage of rounds west towards the location of the fight.

Valdez and the Defendant "escalated the confrontation," turning a physical confrontation into a deadly one. *Id.*

Furthermore, as noted in *Webster*, Okla. Stat. tit. 21 § 1289.11 makes it unlawful for "any person to engage in reckless conduct" while possessing a shotgun, rifle, or pistol. *Id.* The Choctaw Nation Criminal Code mirrors this statute. *See* Choctaw Criminal Code § 1289.11 ("It shall be unlawful for any person to engage in reckless conduct while having in his or her possession any shotgun, rifle or pistol, such actions consisting of creating a situation of unreasonable risk and probability of death or great bodily harm to another, and demonstrating a conscious disregard for the safety of another person."). The Defendant engaged in reckless conduct and created an unreasonable risk by displaying and acting in a threatening manner with a rifle during a fistfight. Aggravating matters, due to a prior felony juvenile adjudication, the Defendant was prohibited form possessing a firearm at the time of the incident.

The Defendant recklessly escalated the confrontation by bringing a firearm to the fistfight. The Defendant then committed murder by shooting Scales. The Defendant should be precluded from arguing self-defense.

**B.** **The Defendant should not be permitted to offer evidence of Victim's domestic altercations and related charges.**

In an abundance of caution, the Government produced police reports and photographs related to the Scales' alleged domestic assaults of Hayes from 2013-2019, and the court docket detailing the issuance of an Emergency Protective Order against Scales dated May 21, 2015. As argued above, the Defendant should be precluded from arguing self-defense. However, if the Defendant is permitted to argue self-defense, the Defendant should be precluded from introducing Scales' prior domestic altercations as evidence of Scales' purported violent character. A purported character trait of violence does not prove an essential element of any charge or defense, including the Defendant's

self-defense claim, and therefore may not be proved by specific instances of conduct, such as the alleged instances of domestic violence. In addition, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice.

Fed. R. Evid. 404(a)(2)(B) states that, in a criminal case, "a defendant may offer evidence of an alleged victim's pertinent trait." Under Fed. R. Evid. 405(a), "[w]hen evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." *See also United States v. Talamante*, 981 F.2d 1153, 1156 (10th Cir. 1992) (citing *Perrin v. Anderson*, 784 F.2d 1040, 1045 (10th Cir. 1986)) (stating that under Fed. R. Evid. 404(a)(2), specific instances of conduct may be relevant to the subject of character; however, 'Federal Rule of Evidence 405 establishes the permissible methods of proving character under Rule 404(a)(2).'); *see also UNITED STATES v. Herder*, 59 Fed. Appx. 257, 263 (10th Cir. 2003).

Under Fed. R. Evid. 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, Fed. R. Evid. 405(b), states that "when a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct."

Under Fed. R. Evid. 403, the "Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

In *Herder,* appellant argued that when a defendant claims self-defense, the allegedly violent character of the purported victim is clearly an essential element of the defense, permitting an inference that the alleged victim was the first aggressor. *Id.* The Court disagreed, finding "it is the

11

law of this circuit that 'a party may present testimony concerning specific instances of conduct only when character is in issue in the strict sense.'" *Id.* (citing *Talamante*, 981 F.2d at 1156). "Character is directly in issue in the strict sense when the existence or nonexistence of the character trait itself determines the rights and liabilities of the parties." *Herder,* 59 Fed. Appx. at 263 (citing *Perrin*, 784 F.2d at 1045); *see also United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995) ("The relevant question should be: would proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge, claim, or defense? If not, then character is not essential and evidence should be limited to opinion or reputation."); Weinstein's Fed. Evid. (2d Ed. § 405.05[3]); W. Strong, McCormick on Evidence, §§ 187, 193 (5th ed. 1999). Thus, "when character evidence is used circumstantially to create an inference that a person acted in conformity with his or her character, Rule 405 allows proof of character only by reputation and opinion." *Herder*, 59 Fed. Appx. at 264 (quoting *Talamante*, 981 F.2d at 1156). In *Herder*, "since character was not directly in issue in the strict sense in the case," the Court ruled the trial court properly limited character evidence regarding the victim in a self-defense case to reputation or opinion evidence. 59 Fed. Appx. at 264.

In *Perrin,* a 42 U.S.C. § 1983 case alleging that excessive use of force resulted in the death of the victim, the Tenth Circuit found evidence of the victim's character or reputation for aggressive behavior toward police was relevant because the defendants claimed they acted in self-defense, and the victim was the aggressor. However, the Tenth Circuit found that the trial court erred in admitting that evidence in the form of specific incidents of the victim's past conduct and ruled instead that only evidence of his reputation for aggressive behavior was admissible. *Perrin*, 784 F.2d at 1045.

Here, proof or failure of proof of the victim's purported violent character trait by itself would not satisfy an element of the charge or any defense in this case. Accordingly, the Court should exclude evidence, testimony, or cross-examination regarding specific instances regarding Scales— to include the Emergency Protection Orders, the misdemeanor charges brought as a result of the May

12

30 incident, and the underlying facts of his prior domestic altercations with Hayes—to prove his general violent character, that he was the first aggressor, or any other character trait.

Additionally, any probative value related to the introduction of testimony or evidence into the prior domestic incidents involving Scales and Hayes would be substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. The prior domestic assaults, which involved one victim with which Scales had an intimate relationship, do not suggest that Scales had a general violent nature. Admission of the evidence would put the focus on Scales as a domestic abuser which had nothing to do with his murder.

### C. If the Defendant is permitted to offer specific incidents of the Victim's conduct for violence, the Government be permitted to offer evidence of specific incidents of the Defendant's same conduct for violence.

As noted above, Fed. R. Evid. 404(a)(2)(B) provides that "a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may: …(ii) offer evidence of the defendant's same trait."

As argued above, the Victim's domestic altercations are not relevant in this case as they involved one person with whom the Victim had an intimate relationship. Any reference to them or to Victim's alleged violent character should not be permitted whether by the specific incidents or by the Victim's alleged reputation for violence. However, if the Defendant is allowed to offer evidence concerning Scales' specific domestic altercations and related charges, the Government should be allowed to offer evidence of the defendant's specific acts of violence including the 2014, 2015, and 2018 incidents of violence. Fed. R. Evid. 404(a)(2)(B)(ii).[2]

---

[2] Defendant may attempt to argue that Fed. R. Evid. 609(d) prohibits use of his prior juvenile conduct. However, Fed. R. Evid. 609(d) does not apply—that rule only applies to impeaching with evidence of a criminal conviction to attack a witness's (or the Defendant's) character for truthfulness. *See* Fed. R. Evid. 609(a).

D. **The Defendant should be precluded from offering his own statement as it is hearsay.**

The Government is permitted to introduce the Defendant's statement as a statement by a party opponent under Fed. R. Evid. 801(d)(2). However, the Defendant should be prohibited from introducing or offering his own out-of-court statements to law enforcement because it is hearsay and does not fall into any exception.

Federal Rule of Evidence 801 states:

> (c) Hearsay means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.
> (d) A statement that meets the following conditions is not hearsay…(2) the statement is offered *against* another party and (A) was made by the party in an individual or representative capacity…

A statement is not hearsay if it is offered against a party and is the party's own statement. *United States v. Brinson*, 772 F.3d 1314, 1320 (10th Cir. 2014) (citing Fed. R. Evid. 801(d)(2)(A)). "Proponents of the evidence need only show by a preponderance of the evidence that the opposing party had made the statement." *Id.* However, hearsay bars a party from presenting its own statements, such as a "defendant . . . attempting to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." *United States v. Baca,* 409 F.Supp. 3d 1042, 1079 (D.N.M. 2019) (citing *United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999)); *see also Rawers v. United States,* 488 F. Supp. 3d 1059, n. 2 (D.N.M. 2020) (Rawers' own statements, when she offers them herself, are hearsay without any exception to save their admissibility).

Here, the Defendant cannot introduce his own prior statement to law enforcement as it is self-serving and does not qualify as a party admission. The Defendant should be precluded from presenting his own out-of-court statements.

## IV. <u>CONCLUSION</u>

The Government respectfully requests the Court exclude and/or limit the evidence, testimony, or cross-examination as discussed above.

    Respectfully submitted,

    CHRISTOPHER J. WILSON
    Acting United States Attorney

    <u>/s/ Brian W. Lynch</u>

    BRIAN W. LYNCH
    Ohio Bar #225047
    Trial Attorney
    U.S. Department of Justice
    Organized Crime & Gang Section
    1301 New York Avenue, N.W.
    Washington, D.C. 20005

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to:

Callie Glanton Steele, Counsel for Defendant
Dinah Manning, Counsel for Defendant

                                               s/ Brian W. Lynch
                                               Brian W. Lynch
                                               Trial Attorney