IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case Number:  21-CR-205-JFH |
| JORDAN WAYNE HOLT, | |
| Defendant. | |

## OPINION AND ORDER

Before the Court is the Motion for Judgment of Acquittal ("Motion") filed by Defendant Jordan Wayne Holt ("Defendant"). Dkt. No. 207. Defendant moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29 "as to all elements of all counts as to which the jury returned a guilty verdict . . . ." *Id*. at 1. The United States of America ("Government") filed a response arguing that it proved all elements of all counts on which Defendant was convicted. Dkt. No. 208.[1] For the reasons set forth below, Defendant's Motion [Dkt. No. 207] is DENIED.

## BACKGROUND

On April 12, 2022, Defendant was charged by second superseding indictment with nine counts: (1) first degree murder; (2) second degree murder; (3) voluntary manslaughter; (4) use of a firearm during a crime of violence; (5) causing the death of a person in the course of using a firearm during a crime of violence regarding Larintino Scales ("Scales"); (6) assault with intent to commit murder; (7) assault with a dangerous weapon regarding Keuntray Willis ("Willis"); (8) use of a firearm during a crime of violence regarding Willis; and (9) felon in possession of a

---

[1]  The Court notes that the Government's response argues that it proved all of the elements of "Counts 4 and 9." Dkt. No. 208 at 1 (emphasis added). The Court presumes that this was a typographical error, as Defendant was convicted on Counts 3 and 9. *See* Dkt. No. 190 at 2.

firearm. Dkt. No. 96. These charges arose out of a fight and shooting that occurred on August 1, 2019 at an apartment complex in Idabel, Oklahoma. *See* Dkt. No. 128 at 3.

The case proceeded to jury trial on July 12, 2022 through July 15, 2022. *See* Dkt. Nos. 182-185. At the trial, the Government presented twenty-one witnesses and Defendant presented eight witnesses. A joint stipulation was also read into the record. Dkt. No. 192. Defendant made his first Rule 29 motion at the close of the Government's case-in-chief. *See* Trial Tr. vol. III, 1026-27. Defendant's motion was overruled. *Id*. at 1028. Following the four day trial, the jury returned a guilty verdict on Count Three, voluntary manslaughter, and Count Nine, felon in possession of a firearm. Dkt. No. 190.

On July 28, 2022, Defendant and the Government jointly moved for an extension of time in which to file motions pursuant to Federal Rule of Criminal Procedure Rule 29(c) and Rule 33, to allow time for the completion of trial transcripts. Dkt. No. 193. The Court granted that motion. Dkt. No. 194. On August 17, 2022, Defendant and the Government filed a second joint motion for a further extension of time in which to file Rule 29(c) and Rule 33 motions, to allow more time for the completion of trial transcripts. Dkt. No. 195. Again, the Court granted that motion. Dkt. No. 196. Defendant filed the instant Motion on November 7, 2022 and the Government filed its response on November 18, 2022. Dkt. Nos. 207, 208.[2] The Motion is now ripe for decision.

## ANALYSIS AND AUTHORITIES

Under Fed. R. Crim. P. 29(c), "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal" upon a motion of the defendant. When the sufficiency of the supporting evidence is challenged, the Court must examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the

---

[2] Defendant did not file a reply.

essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Miller*, 987 F.2d 1462, 1464 (10th Cir.1993). In reviewing the sufficiency of the evidence, the Court must consider the direct and circumstantial evidence, as well as the reasonable inferences to be drawn from that evidence. *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir.1993) (citing *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir.), cert. denied, 498 U.S. 874 (1990)). The Court must accept the jury's resolution of conflicting evidence, as well as the jury's apparent credibility calls. *Id.* (citing *United States v. Youngpeter*, 986 F.2d 349, 352 (10th Cir.1993)). "'[T]he evidence presented to support the conviction must be substantial; . . . it must do more than raise a mere suspicion of guilt.'" *United States v. Torres*, 53 F.3d 1129, 1133–34 (10th Cir. 1991), cert. denied, 515 U.S. 1152 (1995) (quoting *United States v. Sanders*, 928 F.2d 940, 944 (10th Cir.), cert. denied, 502 U.S. 845 (1991)).

On the other hand, the evidence "need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir.1994) (quoting *United States v. Alonso*, 790 F.2d 1489, 1493 (10th Cir.1986)), cert. denied, 514 U.S. 1055 (1995). So long as the jury's verdict is "'within the bounds of reason,'" it will not be disturbed on appeal. *United States v. Ramirez*, 63 F.3d 937, 945 (10th Cir.1995) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir.1993)).

Defendant does not set forth any specific argument, but instead makes a "general motion [ ] as to all elements of all counts as to which the jury returned a guilty verdict, pursuant to *United States v. Kelly*, 535 F.3d 1229, 1234-35 (10th Cir. 2008)." Dkt. No. 207 at 1. The *Kelly* court held that "if a defendant files a general motion for acquittal that does not identify a specific point of attack, the defendant is deemed to be challenging the sufficiency of each essential element of the

government's case, including venue." 535 F.3d 1234-35. Accordingly, the Court will review the sufficiency of the evidence as to each element of each of Counts Three and Nine.

### A.     Voluntary Manslaughter

To obtain a voluntary manslaughter conviction, the Government was required to prove the following elements beyond a reasonable doubt:

**First:**     The Defendant killed Larintino Scales;

**Second:**     The Defendant acted unlawfully;

**Third:**     While in heat of passion, and therefore without malice, the Defendant:

> acted with general intent to kill Larintino Scales; *or*
>
> intended to cause Larintino Scales serious bodily injury; *or*
>
> acted with a depraved heart, that is, recklessly with extreme disregard for human life;

**Fourth:**     The Defendant was an Indian; and

**Fifth:**     The killing took place within Indian Country in the Eastern District of Oklahoma within the territorial jurisdiction of the United States.

Dkt. No. 187. The Court finds that the Government presented sufficient evidence from which the jury could convict Defendant on the voluntary manslaughter charge.

#### 1.     *The Defendant killed Larintino Scales*

Regarding the first element, the Court finds that there is sufficient evidence, as well as reasonable inferences to be drawn from that evidence, for a reasonable jury to find that Defendant killed Larintino Scales. First, the Government offered the testimony of Dr. Cheryl Niblo, a forensic pathologist in the Office of the Chief Medical Examiner in Tulsa. *See* Trial Tr. vol. II, 653:20-25, 654:13. Dr. Niblo performed the autopsy on Larintino Scales and determined that his cause of death was gunshot wound to the head. *Id.* at 656:3-6, 657:10-22. Dr. Niblo testified that Scales' gunshot wound was "most consistent with a fragment from a high-velocity bullet." Trial

Tr. vol. II, 674:22-23. The Government's witness Anthony Aho, an officer with the Idabel Police Department at the time of the shooting, testified that a 7.62x39mm bullet is the type of bullet used in a "high-velocity firearm." *See* Trial Tr. vol. II, 732:25, 733:1-7. The Government's witness David Wardlaw, a special agent with the Federal Bureau of Investigation ("FBI") and Certified Firearms Specialist, testified that the firearm collected in the case, and as entered into evidence as Exhibit 44, was a 7.62x39mm caliber firearm. *Id*. at 758:20-22. The Government's witnesses, Keuntray Willis and Traneicia French, who were present at the time of the shooting, both testified that Exhibit 44 was the firearm they saw Defendant holding at the time of the shooting. Trial Tr. vol. II, 404:12-25, 405:1-10; 457:5-17.

Next, the Government offered the testimony of Bradley Knight, a lieutenant with the Oklahoma State Bureau of Investigation. *See* Trial Tr. vol. III, at 823. Lieutenant Knight testified regarding his analysis of the crime scene and concluded that, based upon his training and experience and a review of all relevant materials, "the bullet fragment that struck Scales was fired from east to the west . . . ." Trial Tr. vol. III, 897:4-6. FBI Special Agent Adam Noble testified that, as a result of his investigation, he determined that Defendant was firing his firearm from east to west at the time of the shooting. Trial Tr. vol. III, 955:3-9 (A. "It appears that the defendant is holding what I believe to be an AK-47." Q. "And what direction does it appear that he's holding the AK-47?" A. "He's on the eastern side of that dumpster and it would appear that weapon is pointed toward the west."). Other Government witnesses testified that they saw Defendant firing his firearm into the direction of the crowd, where Scales was standing at the time of the shooting, and that Defendant was the only individual firing from that particular direction. *See* Trial Tr. vol. II, 633: 1-2, 5-6; Trial Tr. vol. II, 635:5-16; *see also* Trial Tr. vol. II, 511:3-16. The Court finds

that the Government presented sufficient evidence from which the jury could find that Defendant killed Larintino Scales, thereby satisfying the first element.

> 2. *The Defendant acted unlawfully*

Regarding the second element, the jury was instructed that "[a] person is entitled to defend himself or another against the immediate use of unlawful force." Dkt. No. 187 at 31. However, a person may use force "intended or likely to cause death or great bodily harm only if he reasonably believes that force is necessary to prevent death or great bodily harm to another." *Id*. A killing may be considered lawful only under these specific circumstances. The jury was further instructed that to find Defendant guilty of the crimes charged in the second superseding indictment, including voluntary manslaughter, it must be convinced that the Government has proven beyond a reasonable doubt either that (1) Defendant did not act in self-defense; or (2) it was not reasonable for Defendant to think that the force he used was necessary to defend himself or another against an immediate threat. *Id*.

Defendant put on evidence of self-defense, including evidence that Scales fired a firearm before Defendant began shooting on August 1, 2019. *See* Trial Tr. vol. II, 486:1-6. However, the Government put on evidence that Defendant fired as many as thirty rounds into a crowd of people and continued firing even after the fight concluded and the crowd had begun to run away from the scene. *See* Trial Tr. vol. II, 633:7-15; 396:15-25, 397:1-4; 427:19-25, 428:1-2. The Court finds that the Government presented sufficient evidence from which the jury could find that Defendant acted unlawfully, or that it was not reasonable for Defendant to think that the force he used was necessary to defend himself against immediate threat, thereby satisfying the second element.

> 3. *While in heat of passion, and therefore without malice, the Defendant acted with general intent to kill Larintino Scales; or intended to cause Larintino Scales serious bodily injury; or acted with a depraved heart, that is, recklessly with extreme disregard for human life*

Regarding the third element, the jury was instructed that the term "heat of passion" means "a passion, fear, or rage in which the Defendant loses his normal self-control, as a result of circumstances that provoke such a passion in an ordinary person, but which did not justify the use of deadly force." Dkt. No. 187 at 20. The jury was instructed to "consider all the facts and circumstances preceding, surrounding, and following the killing, which tend to shed light upon the condition of the Defendant's mind, before and at the time of killing." *Id*.

Defendant presented evidence that suggested that Defendant acted in the heat of passion—that Defendant fired his firearm in response to Scales firing his firearm. *See* Trial Tr. vol. II, 486:1-6. However, as discussed earlier, the Government put on evidence that Defendant fired as many as thirty rounds into a crowd of people and continued firing even after the fight concluded and the crowd had begun to run away from the scene. *See* Trial Tr. vol. II, 633:7-15; 396:15-25, 397:1-4; 427:19-25, 428:1-2. The Court finds that the Government presented sufficient evidence from which the jury could find that Defendant, while in heat of passion, acted with a depraved heart, that is, recklessly with extreme disregard for human life, thereby satisfying the third element.

> 4. *The Defendant was an Indian*

Regarding the fourth element, to determine whether Defendant is an Indian, the jury was required to find that:

> **First**: The Defendant has some Indian blood; and
>
> **Second**: The Defendant is recognized as an Indian by a federally recognized tribe or by the federal government.

*See* Dkt. No. 187 at 16. The jury was instructed that the first factor was dispositive if it found that Defendant was an enrolled tribal member. *Id*. In determining whether the Defendant was a

member of, or affiliated with, a federally recognized tribe, the jury was instructed that it could consider: (1) enrollment in a federally recognized tribe; (2) government recognition formally and informally through receipt of assistance reserved only to Indians; (3) enjoyment of the benefits of tribal affiliation; and (4) social recognition as an Indian through living on a reservation and participating in Indian social life. *Id*. The Court took judicial notice that the Choctaw Nation of Oklahoma is a federally recognized Indian tribe, but instructed the jury that, while it may accept this fact as proven, it was not required to do so. *Id*. at 17.

The Government's witness Tabitha Oaks, the Certificate Degree of Indian Blood ("CDIB") Membership Manager for the Choctaw Nation, testified that Defendant had certifying documentation demonstrating his membership in the Choctaw Nation. This certifying documentation was also entered into evidence as Government's Exhibit 78.

> Q.  Just to be clear, what is it that this document certifies – what does this document say about Jordan Wayne Holt?
>
> A.  That he has a CDIB card that shows that he's Choctaw and he is a member of our tribe.

*See* Trial Tr. vol. II, 532:11-15. The Court finds that the Government presented sufficient evidence from which the jury could find that Defendant was an Indian, thereby satisfying the fourth element.

> 5.  *The killing took place within Indian Country in the Eastern District of Oklahoma within the territorial jurisdiction of the United States*

Regarding the fifth element, the Court took judicial notice that the location of the alleged crimes was in Indian Country, that is the Choctaw Nation of Oklahoma, within the Eastern District of Oklahoma and within the territorial jurisdiction of the United States. Dkt. No. 187 at 17. The jury was instructed that it may accept this fact as proven, but it was not required to do so. *Id*. Additionally, the Government called FBI Agent Adam Noble, who testified that the killing occurred in the Eastern District of Oklahoma, more particularly, in Choctaw Nation. *See* Trial Tr.

vol. II, 947:11-21.  The Court finds that the Government presented sufficient evidence from which the jury could find that the killing took place within Indian Country in the Eastern District of Oklahoma within the territorial jurisdiction of the United States, thereby satisfying the fifth element.

In reviewing the sufficiency of the evidence as to each element of Count Three, the Court has considered the direct and circumstantial evidence, as well as the reasonable inferences to be drawn from that evidence.  The Court has further accepted the jury's resolution of the evidence and the jury's apparent credibility calls, as it must.  *See Davis*, 1 F.3d at 1017.  Therefore, the Court finds that the evidence presented as to each element of Count Three, when viewed in the light most favorable to the Government, supports the jury's verdict and, as such, there is no basis for judgment of acquittal as to Count Three, voluntary manslaughter.

### B. Felon in Possession of a Firearm

To obtain a felon in possession of a firearm conviction, the Government was required to prove the following elements beyond a reasonable doubt:

**First:** The Defendant knowingly possessed a firearm;

**Second:** The Defendant was convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year, before he possessed the firearm;

**Third:** At the time the Defendant possessed the firearm, he knew he had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year; and

**Fourth:** Before the Defendant possessed the firearm, the firearm had moved at some time from one state to another.

Dkt. No. 187.  The Court finds that the Government presented sufficient evidence from which the jury could convict Defendant on the felon in possession of a firearm charge.

First, the parties stipulated and agreed that Defendant was convicted of a crime punishable by imprisonment for a term exceeding one year, before the date of the incident. Dkt. No. 192. The parties further stipulated and agreed that Defendant had knowledge that he was convicted of a crime punishable by a term of imprisonment exceeding one year, before the date of the incident. *Id*. These stipulations satisfy the second and third elements of this offense.

### 1. *Defendant knowingly possessed a firearm*

Regarding the first element, the Court finds that the Government presented sufficient evidence from which the jury could find that Defendant knowingly possessed a firearm. Specifically, the Government offered the testimony of witness Traneicia French, Keishante Richards, Deanna Garza, and Tajohn Garza, who all testified that they saw Defendant in possession of a firearm. *See* Trial Tr. vol. II, 453-56; 540:24-25 ("I seen [Defendant] standing by the trash with a gun . . . ."); 630:14-15 ("I seen [Defendant] get up and come from behind the tree right there with the gun shooting . . . ."); *see also* Trial Tr. vol. II, 589:24-25, 590:9-10. The Court finds that the Government presented sufficient evidence from which the jury could find that Defendant knowingly possessed a firearm, thereby satisfying the fourth element.

### 2. *Before the Defendant possessed the firearm, the firearm had moved at some time from one state to another*

Regarding the fourth element, the Court finds that the Government presented sufficient evidence from which the jury could find that the firearm had moved from one state to another prior to Defendant's possession of the firearm. Specifically, the Government's witness, David Wardlaw, a special agent with the FBI and Certified Firearms Specialist, testified that the firearm that Defendant possessed was manufactured in Romania and was imported to Vermont prior to Defendant's possession of the firearm in Oklahoma. *See* Trial Tr. vol. II, 753:13-15, 18-21; 757: 11-15, 18-20; 759:19-22. The Court finds that the Government presented sufficient evidence from

which the jury could find that the firearm had moved from one state to another prior to Defendant's possession of the firearm, thereby satisfying the fourth element.

In reviewing the sufficiency of the evidence as to each element of Count Nine, the Court has considered the direct and circumstantial evidence, as well as the reasonable inferences to be drawn from that evidence. The Court has further accepted the jury's resolution of the evidence and the jury's apparent credibility calls, as it must. *See Davis*, 1 F.3d at 1017. Therefore, the Court finds that the evidence presented as to each element of Count Nine, when viewed in the light most favorable to the Government, supports the jury's verdict and, as such, there is no basis for judgment of acquittal as to Count Nine, felon in possession of a firearm.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Judgment of Acquittal [Dkt. No. 207] is DENIED.

DATED this 13th day of December, 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE